**UNITED STATES of America**

v.

**Curtis Alan WHARTON**

**No. CR. A. 00–50066.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

July 26, 2001.

Sonia Peters Cassidy, Robert A. Thrall, C. Mignonne Griffing, Cristina Walker, Ross Stewart Owen, U.S. Atty.'s Office, Shreveport, LA, for U.S.

Ansel Martin Stroud, III, Blanchard Walker et al, Shreveport, LA, Jayne C. Weintraub, Steven M. Potolsky, Miami, FL, Peter Reichman Flowers, Judy Helen Taylor Nipper, Shreveport, LA, for Curtis Alan Wharton.

### *MEMORANDUM RULING*

WALTER, District Judge.

On March 15, 2001, defendant filed a motion to suppress certain physical evidence, including evidence seized from defendant Wharton's Haitian rental car. *See Record Document #52.* The evidence found in the rental car and seized from the United States Embassy included three large suitcases, one brown briefcase, one black carrying bag, one black purse, one Sony laptop computer and five rolls of undeveloped film. *See FBI Application and Affidavit for Search Warrant*, Attachment B. After the property in question

was returned to the Western District of Louisiana from Haiti, the government demonstrated probable cause to search such items and Magistrate Judge Payne authorized the search warrant on April 27, 2000. *See id.* In reviewing the defendant's March, 2001 motion to suppress, in conjunction with the warrant and Magistrate Payne's conclusions, this Court denied the motion to suppress. *See Minute Entry Order,* March 27, 2001.

### The February 2000 Meeting at the U.S. Embassy

Although the Court denied this motion in March, the defendant, on June 15, 2001, reurged the Court to suppress in light of newly available *Jencks* materials provided to the defendant. On June 13, 2001, the government provided the defendant with an FBI 302 authored by SSA Michael H. Bonner ("Bonner"). Bonner writes that, on February 3rd and 4th, 2000, he met with Chief Consulate Officer M. Allison Insley–Madsen ("Insley") at the U.S. Embassy in Port–au–Prince, Haiti. The purpose of the meeting was "in connection with the U.S. Embassy's involvement in the disposition of property belonging to Curtis Wharton and Sheila Wharton." *Defendant's Motion to Renew,* Attachment 2: Bonner's 302 report. Insley provided Bonner with a copy of a "General Power of Attorney" form, signed by Wharton and Insley, which appointed the U.S. Embassy power of attorney to take possession of the Whartons' property from the Haitian government. *See id.*

After showing Bonner the power of attorney form, Insley "then provided Bonner with a copy of an inventory list of all of the Wharton[s'] property that was released, by

the Haitian National Police (HNP), to the U.S. Embassy and a chronology of the U.S. Embassy's involvement upon notification of Sheila Wharton's death." *Id.* After looking at the inventory list, Bonner then "requested and was granted access to Sheila and Curtis Wharton's property in possession of the U.S. Embassy. The property was located in a locked area on the second floor of the U.S. Consulate." *Id.*

Bonner stated:

During his examination of the Wharton's property, SSA Bonner noted that there were several items that could be pertinent to the HNP's investigation. SSA Bonner requested to take possession of five rolls of undeveloped film, a Sony laptop computer and A:* drive, two cellular phones, and a computer print-out regarding travel information on Haiti. A receipt was prepared and signed by SSA Bonner and Insley Madsen. A copy of the receipt will be incorporated into this report. The items were retained as evidence in the Federal Bureau of Investigation (FBI), Miami Office. *Id.*

### The "General Power of Attorney" Form

From reading Bonner's 302 report, it appears as though he relied upon the "General Power of Attorney" form for authorization to take possession of Wharton's inventoried items. The "General Power of Attorney" form specifically delineates the single power granted by Curtis Wharton to the U.S. Embassy, namely, to "take possession of my belongings when released by the Haitian Government." *Id.,* Attachment 1: General Power of Attorney form.[1]

---

1. The "General Power of Attorney" form states,
   Known all by these present: That *Curtis Alan Wharton,* of the *City* of *Shreveport, Louisiana;* and Republic of *USA* do by

these present hereby make, constitute and appoint *The Embassy of the United States of America* of the City of *Port–au–Prince* and State of *Haiti* true and lawful attorney in fact for *Me* and in *My* name, place and

Standard language pre-printed on the form notes that,

> Granting and giving unto my attorney-in-fact full authority and power to do and perform any and all acts or incidents necessary to the performance and execution of the powers herein expressly granted, with power to do and perform all acts authorized hereby, as fully to all intents and purposed [sic] as the grantor might or could do if personally present, with full power of substitution. *Id.*

Both Curtis Wharton and Allison Insley–Madsen signed the form, which was dated January 20, 2000.

### The Search Warrant

Following his meeting with Insley, Bonner presumably transported Wharton's property to the Federal Bureau of Investigation (FBI), Miami Office. On April 27, 2000, the FBI sought and was granted the search warrant to examine the property, by this time apparently located in the Western District of Louisiana. After receiving the warrant, the FBI precisely detailed each item found in the luggage, the handbag and the briefcase. Such information is found on the inventory list attached to the search warrant. *See FBI Application and Affidavit for Search Warrant,* Attachment D.

### LEGAL ANALYSIS

■ The Fourth Amendment provides that "[t]he right of the people to be secure in their persons...and effects, against unreasonable searches and seizures, shall not be violated[.]" *U.S. Const.* amend. IV. Under the exclusionary rule, which "was adopted to effectuate the Fourth Amendment right of all citizens ... evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

■ The exclusionary rule does not require the exclusion of all evidence that is the subject of an unlawful search or seizure. Rather, the exclusionary rule is a jurisprudential construct designed for the purpose of deterring "future unlawful police conduct and thereby effectuat[ing] the guarantee of the Fourth Amendment against unreasonable searches and seizures[.]" 414 U.S. at 347, 94 S.Ct. at 619–20. Therefore, when an officer acts with "objective good faith," the exclusionary rule would not serve its purpose and need not be applied. *United States v. Leon,* 468 U.S. 897, 920–21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984); *United States v. Jackson,* 825 F.2d 853, 866 (5th Cir.1987) (finding "exclusionary rule should not be applied to searches which relied on Fifth Circuit law prior to the change of that law").

Therefore, when asked to suppress the defendant's property recovered by Bonner at the United State Embassy in Port–au–Prince, Haiti, this Court must not only determine whether Bonner's actions constituted an unreasonable search and seizure, but also whether invocation of the exclusionary rule would serve its intended purpose.

■ In the instant matter, it is not determinative that Bonner's seizure took place inside a United States Embassy. "The Fourth Amendment not only protects all within our bounds; it also shelters our

stead to *take possession of my belongings when released by the Haitian government.* Defendants' Motion to Renew, Attachment 1: General Power of Attorney form. Underlined portions of the "General Power of Attorney" form indicate typewritten responses in blank areas of the form.

citizens wherever they may be in the world from unreasonable searches and seizures by our own government." *United States v. Conroy*, 589 F.2d 1258, 1264 (5th Cir. 1979) (citations omitted). However, a complication arises because the seizure of the defendant's property took place outside of the territorial jurisdiction of any United States District Court.

The power of the United States District Courts to issue a search warrant is limited by Federal Rule of Criminal Procedure 41. Specifically, Rule 41 grants a United States "federal magistrate judge, or a state court of record within the federal district" the power to issue a warrant "for a search of property or for a person within the district" encompassed by the federal court or for property that is within the federal district when the search warrant is issued but "might move outside the district before the warrant is executed." *Fed. R.Crim.P.* 41(a) and (b).

Clearly, Rule 41 did not empower any United States District Court to issue a search warrant for the defendant's property when it was located at the United States Embassy in Port–au–Prince, Haiti. Indeed, as much is recognized by a pending amendment to Rule 41.[2]

■ Certainly, the rights guaranteed by the Fourth Amendment cannot be abrogated because Congress has failed to enable the federal courts to enforce those very rights. Indeed, some argue that United States District Courts have a common law right to issue warrants even when statutory authorization is lacking. *United States v. New York Tel. Co.*, 434 U.S. 159, 169 n.

14, 98 S.Ct. 364, 370 n. 14, 54 L.Ed.2d 376 (1977) (noting "an inherent power...to issue search warrants under circumstances conforming to the Fourth Amendment[ ]"); *United States v. Torres*, 751 F.2d 875, 878–79 (7th Cir.1984) (recognizing the inherent power of the courts to issue warrants); *United States v. Bin Laden*, 126 F.Supp.2d 264, 275–77 (S.D.N.Y.2000) (discussing and citing *New York Telephone Co., Torres* and numerous other cases that support the common law right for a court to issue a warrant).

However, the inherent powers of the United States District Courts are not at issue. The only issue before this Court is the reasonableness of Bonner's warrantless seizure of the defendant's property from the United States Embassy in Port–au–Prince, Haiti.

Bonner acted reasonably when he seized the defendant's property and returned it to the United States where a search warrant later was issued pursuant to Rule 41. Given the complex factual circumstances surrounding this seizure and the uncertainty of the power of a United States District Court to issue a search warrant for the defendant's property while it was located in Haiti, Bonner's action was limited, reasonable and the least intrusive manner of assuring that the defendant's Fourth Amendment rights would be protected.

As it remains unclear to this Court whether a United States District Court could have issued a search warrant for the defendant's property in these circumstances, it is beyond question that Bonner's actions were not unreasonable in

**2.** Currently awaiting adoption by the Supreme Court is proposed Rule 41(a)(3), which would provide a United States District Court with the power to issue warrants for the search of property outside the United States. This amendment to Rule 41 would empower a federal magistrate judge to issue a warrant

"for a search of property outside the United States if the property is lawfully subject to search and seizure by the United States and is relevant to a criminal investigation in the district in which the warrant is sought." 129 F.R.D. 557, 578 (1990).

seizing the property. Indeed, it is not clear that it would have been unreasonable for Bonner to have searched the defendant's property in Haiti, given the current uncertainty of the law.[3]

*Conclusion*

For the foregoing reasons, this Court finds that defendant Curtis Wharton's motion to suppress certain physical evidence, including evidence seized from defendant Wharton's Haitian rental car, *see Record Document # 52*, must be **DENIED**.

3. Of course, Bonner did not conduct such a search. Federal investigative authorities first procured a warrant from Magistrate Judge Roy S. Payne prior to searching the items in question.